GEORGE W. NOWELL (SBN: 83868)
 george.nowell@nowelllaw.com
PAUL B. ARENAS (SBN: 167863)
 paul.arenas@nowelllaw.com
**LAW OFFICES OF GEORGE W. NOWELL**
120 Montgomery Street, Suite 1990
San Francisco, CA 94104
Telephone: (415) 362-1333
Facsimile: (415) 362-1344
Attorneys for Plaintiffs:
GENENTECH, INC., ASD SPECIALTY HEALTHCARE, INC. dba ONCOLOGY SUPPLY, FALVEY CARGO UNDERWRITING, and ALLIANZ GLOBAL RISKS US INSURANCE COMPANY

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## (SAN FRANCISCO DIVISION)

| | |
|---|---|
| GENENTECH, INC., ASD SPECIALTY HEALTHCARE, INC. dba ONCOLOGY SUPPLY, FALVEY CARGO UNDERWRITING, and ALLIANZ GLOBAL RISKS US INSURANCE COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>EARL L. HENDERSON TRUCKING CO., INC.,<br><br>Defendants. | CASE NO. C 07 2513<br><br>**COMPLAINT FOR CARGO LOSS**<br><br>DEMAND FOR JURY TRIAL |

The Plaintiffs above-named by their attorneys, Law Offices of GEORGE W. NOWELL, complaining of the above-named Defendant, alleges upon information and belief:

### JURISDICTION

1. This is a case of federal question jurisdiction, within the provisions of 28 U.S.C. § 1331 and 1337, involving interstate carriage of goods under the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706, and under Federal common law, with an amount in controversy exceeding $10,000, exclusive of costs and interest.

\ \ \

\ \ \

1

COMPLAINT FOR CARGO LOSS

## INTRADISTRICT ASSIGNMENT

2. Assignment to this District is proper because the cause of action arose in South San Francisco, California in the County of San Mateo, California.

## FIRST CLAIM FOR RELIEF

3. Plaintiffs are and were at and during the times hereinafter mentioned, corporations organized and existing under the laws of one of the States of the United States of America or a country of the world.

4. At and during all the times hereinafter mentioned, the Defendant was and now is a legal entity capable of being sued in this Court and engaged in business as a common carrier of merchandise by land or air for hire with an office, agent or doing business within the jurisdiction of this court.

5. At and during all the times and places hereinafter mentioned, the Defendant was the duly authorized agent, servant, or employee of the remaining Defendants, and was at all times and places mentioned herein acting within the purpose and scope of said agency, service and employment in connection with the matters herein alleged.

6. Plaintiffs are the owners, shippers and consignees (or assignee of one of them) of the cargo described in Exhibit A attached hereto or the underwriter thereof and as such is subrogated to all of the rights of the foregoing, and is the proper party to bring this action on its own behalf and as agent and trustee on behalf of any and all other parties interested in such cargos as their respective interests may ultimately appear.

7. Defendant carried, handled, was the bailee of, consolidated, forwarded or controlled Plaintiff's personal property ("cargos") as described in Exhibit A hereto.

8. This is a case of cargo loss resulting from breach or other fault by the Defendant, of its contractual duties as common carrier or party to the contracts of affreightment, bailment and other contracts with respect to cargos loaded at the places described in Exhibit A attached hereto, carried pursuant to the contracts and bills of lading identified in Exhibit A or following therefrom and related thereto, and which were damaged and totally lost while in transit to the place of delivery named in Exhibit A; such damage is described in and amounting to the sums

stated in Exhibit A. A copy of the contract is attached hereto as Exhibit B and incorporated herein by this reference.

9. At no time have Plaintiffs been compensated for their damages as alleged above by Defendant, despite demands made therefor. Defendant refuses and continues to refuse to pay Plaintiffs' damages.

10. As a proximate result of said refusals, Plaintiffs have been damaged in an amount in excess of that stated in Exhibit A. In addition to those losses, Plaintiffs have incurred attorney fees and other recovery expenses in amounts as yet unascertained.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## SECOND CLAIM FOR RELIEF

11. Plaintiffs incorporate Paragraphs 1 through 7 and 9 through 10 of this Complaint, as if herein stated in full.

12. Defendant so negligently breached its duties as common carrier, handler, bailee, warehouseman or its other capacities with respect to the cargos loaded at the places described in Exhibit A attached hereto and carried pursuant to the contracts and bills of lading identified in Exhibit A, that said cargos were damaged while in transit to the place of destination named in Exhibit A; such damages amounting to the sums stated in Exhibit A.

13. As a direct and proximate result of the conduct as aforesaid of Defendant, Plaintiffs have been damaged in an amount in excess of that set forth in Exhibit A. In addition to those losses, Plaintiffs have incurred attorney fees and other recovery expenses in amounts as yet unascertained.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## PRAYER

WHEREFORE, Plaintiffs pray:

1) That process in due form of law according to the practices of this Court may issue against defendant;

2) That a decree may be entered in favor of plaintiffs against defendant for the amount of plaintiffs' damages together with interest at the maximum

rate allowable by law and costs incurred; and

3) Plaintiff further prays for such other further and different relief as this Court may deem just and proper in the premises.

DATED: May 8, 2007                LAW OFFICES OF GEORGE W. NOWELL

*/s/ Paul B. Arenas*

Paul B. Arenas
GENENTECH, INC., ASD SPECIALTY HEALTHCARE, INC. dba ONCOLOGY SUPPLY, FALVEY CARGO UNDERWRITING, and ALLIANZ GLOBAL RISKS US INSURANCE COMPANY

### DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial in this action.

DATED: May 8, 2007                LAW OFFICES OF GEORGE W. NOWELL

*/s/ Paul B. Arenas*

Paul B. Arenas
GENENTECH, INC., ASD SPECIALTY HEALTHCARE, INC. dba ONCOLOGY SUPPLY, FALVEY CARGO UNDERWRITING, and ALLIANZ GLOBAL RISKS US INSURANCE COMPANY

# EXHIBIT A

| | |
|---|---|
| RECEIPT FOR CARGO: | HENDERSON TRANSPORTATION SHIPPING RECEIPT Dated February 14, 2005 issued upon pick-up of cargo (Copy attached hereto as **Exhibit C** and incorporated herein by this reference). |
| DATE OF SHIPMENT: | On or about February 14, 2005 |
| DATE OF DELIVERY: | Destroyed by fire in transit |
| PLACE OF SHIPMENT: | GENENTECH, INC.<br>437 Kaufmann Court<br>South San Francisco, CA 94080 |
| PLACE OF INTENDED DELIVERY: | ONCOLOGY SUPPLY CO.<br>2701 Horace Shepard Drive<br>Dothan, AL 36303 |
| PLACE OF LOSS: | En route to place of delivery and while in the custody of defendant |
| DATE OF LOSS: | Between about February 14, 2005 and February 16, 2005 |
| SHIPPER: | GENENTECH, INC. |
| CONSIGNEE: | ONCOLOGY SUPPLY CO. |
| DESCRIPTION OF CARGO: | 14,496 vials of various drugs and biopharmaceuticals as follows:<br>1332 PCS PERCEPTIN 440 MG<br>3120 PCS LITUXAN 100 MG<br>2640 PCS LITUXAN 100 MG<br>480 PCS CATHFLO ACTIVASE 2MG VIAL<br>3180 PCS RITUXAN<br>2400 PCS AVASTIN 100 MG<br>1344 PCS AVASTIN 400 MG |
| INVOICE NOS.: | IN00990248 dated 02/14/05<br>IN00990249 dated 02/14/05<br>IN00990250 dated 02/14/05<br>IN00990251 dated 02/14/05 |
| NATURE OF DAMAGE: | Lost in fire en route to intended place of delivery |
| AMOUNT OF DAMAGE: | In Excess of **$ 16,803,696.72** |

COMPLAINT FOR CARGO LOSS

LAW OFFICES OF GEORGE W. NOWELL
120 Montgomery Street, Suite 1990
San Francisco, CA 94104
Phone: (415) 362-1333 Fax: (415) 362-1344

P0508.2007-1625



# EARL L. HENDERSON
## Trucking Co.

#1 Industrial Park
Salem, Illinois 62881
web site: www.hendersontrucking.com

FAX: (618) 548-6204
(800) 447-8084
Phone: (618) 548-4667

## CONTRACT AGREEMENT

This Agreement, entered into this 16th day of May 2003, by and between Genentech, Inc. hereinafter designated as "SHIPPER" and EARL L. HENDERSON TRUCKING CO., INC., hereinafter, designated as "CARRIER", WITNESSETH: *has authority from the ICC/Department of Transportation, to*
THAT, WHEREAS, the Carrier ~~is already~~ engaged in the ~~transportation of~~ *contract carriage of* freight by motor vehicle and desired to transport such goods of the Shipper as are offered to Carrier, and to facilitate such transportation and for the convenience in handling such transactions and agreeing to the terms and conditions of such transportation, the parties have agreed to the terms and conditions under which all of such transportation shall be made as hereinafter set forth.

NOW, THEREFORE, in consideration of the premises and mutual promises and conditions herein contained, it is hereby agreed as follows:

TERMS AND CONDITIONS

1. General Provisions:

(a) Shipper agrees to tender to Carrier for transportation and Carrier agrees to transport for Shipper a minimum of ~~40,000 pounds of freight~~, per year, and in accordance with rates and provisions as set forth in the schedule of rates attached hereto and marked Appendix "A". Carrier further agrees, subject to availability and loading capacity of its fleet of trucks, to transport such additional freight as may be tendered for transportation by Shipper, all subject to the provisions hereinafter set forth. Shipper shall not be liable in any respect for failure to ship such tonnage if hindered or prevented, directly or indirectly, by war, conditions of war, strikes, lockouts, fires, floods, cyclones, accidents or other agencies or acts of God, failure to secure raw materials, or any other cause beyond its control, whether of the same kind or not. In the event of any such failure, the minimum provided tonnage above shall be reduced by the proportion such period of failure bears in one year.

(b) All commodities handled by Carrier for Shipper or for any of Shipper's subsidiary companies during the life of this contract, shall be covered by the terms and conditions of this contract., and its is understood and agreed that in each instance where the word "Shipper" is used in this contract, it shall be construed, in connection with each piece of goods transported, to mean Shipper and/or any of its subsidiary companies, as the case may be.

(c) This agreement shall not be altered except in writing endorsed hereon and signed by both parties.

(d) This contract cancels and supplants any and all other written or oral agreements and understandings for trucking between Carrier on the one hand and Shipper on the other hand, and said contract shall remain in full force and effect for one (1) year from date hereof and from year to year thereafter, subject to the right of termination be either party at any time on thirty (30) days notice in writing to the other party, and in the event of termination at any time other than the end of one or more years from date hereof, the minimum provided in Paragraph 1 (a) shall be reduced by the proportion of the unexpired portion of the bears to one year.

(e) It is to be clearly understood, and it is the intention of the parties hereto, that Carrier shall employ all persons operating trucks hereunder and that such persons shall be and remain the employees of Carrier and that the Carrier shall be an independent contractor and nothing herein contained shall be construed to be inconsistent with that relationship or status.

EXHIBIT B

(f) All commodities transported by Carrier for Shipper during the period of the contract, whether received from Shipper direct of from a third person, firm or corporation, shall be transported by Carrier under the terms and conditions of this contract, it being expressly agreed by the Carrier that the terms of this contract shall be incorporated by reference into each and every such contract of transportation or shipment by the acceptance by Carrier of the goods of the Shipper and/or issuance therefor, either to Shipper or to the third persons, of receipt.

2. Receipts for Goods:

(a) Carrier agrees, upon receipt from shipper of such quantities of Shipper's goods as may be tendered Carrier from time to time by Shipper to give Shipper a written notice of receipt therefor, which shall be prima facia evidence of receipt of such goods in good order and condition unless otherwise noted upon the face of said receipt.

(b) Carrier further agrees that as to goods of Shipper received from time to time from third persons for transportation for shipper, Carrier will give said third person a written receipt for all such goods by Carrier in good order and condition unless otherwise noted on the face of said receipt.

3. (a) Carrier agrees, upon receipt of the goods of the Shipper, whether direct from Shipper or from third parries to transport and carry such goods without delay and deliver them in like good order and condition to the consignors at the destinations directed by Shipper, or third party.

(b) Carrier shall not be liable for delay in delivery if he shall in any respect be hindered or prevented, directly or indirectly, by strikes, lockouts, fires, floods, cyclones or other agencies or act of God, or other causes beyond his control, from making delivery.

4. Liability for Loss or damage of Shipment:

Carrier agrees that, in the transportation of any goods of the Shipper, he will assume, and does assume, the liability of an interstate common carrier, such liability to exist from the time of the receipt of any said goods by Carrier until proper delivery has been made. Carrier maintains $250,000 of cargo liability insurance.

5. Collections:

Carrier agrees to collect in cash or by certified check for all C.O.D. shipments on delivery of such shipments to the consignee, and monies or checks collected, whether on C.O.D. shipments or otherwise, shall be kept separate and apart from all other monies and turned over to shipper. This paragraph shall not be applicable if no C.O.D. Provision is published in schedule.

6. Indemnity of Shipper from Claims for Accidents:

Carrier agrees to indemnify and save harmless Shipper for any and all claims for death or injury to person, and/or loss of or damage to property, of any nature whatsoever, growing out of or in any way arising from the transportation by Carrier of the goods of the Shipper.

7. Compensation:

Shipper agrees to pay Carrier as full compensation for services to be performed by Carrier hereunder, at the rates set forth in the schedule of rates set forth in Appendix A.

8. Claim Handling Procedure:

The parties hereto agree that the processing of claims for loss, damage, injury, delay of property, shall be in conformance with the rules and regulations of ~~the Interstate Commerce Commission~~ 49 USC Section 14706.

9. Environmental standards:

It is further agreed by the parties hereto that the transportation service to be performed will have no adverse effect upon the quality of human environment.

10. Maislin ("Filed Rate") Protection, Warranty and Indemnification.

Earl L. Henderson Trucking Co. warrants to Shipper that Earl L. Henderson Trucking Co. agrees to assume all responsibility for any future claim of "filed rate" discrepancies on any shipment (s) which were accomplished under the terms of this Agreement between Earl L. Henderson Trucking Co. and Shipper. Should any demand be made upon Shipper for "filed rate" discrepancies on shipments accomplished under the terms of this Agreement, Earl L. Henderson Trucking Co. agrees to defend, release and indemnify Shipper for all such demands, upon

satisfactory proof that all such demands are actually related to the shipments accomplished be Earl L. Henderson Trucking Co. on behalf of Shipper.

IN WITNESS WHEREOF, the parties have hereto signed this Agreement this __16th__ day of __May__, 2003.

Carrier:
Genentech, Inc
By: _____
Title: MANAGER, TRANSPORTATION

Shipper:
EARL L. HENDERSON TRUCKING CO., INC.,
By: _____
Title: Sr.V.P.Sales&Marketing,
Jack Camden

*Printing...* Carbon, a... tained by the Agent.

| | | | Carrier No. | |
|---|---|---|---|---|
| Page 1 of 1 | HENDERSON TRANSPORTATION | | Date 02/14/05 | |
| | (Name of carrier)    (SCAC) | | | |

On Collect on Delivery shipments, the letters "COD" must appear before consignee's name or as otherwise provided in Item 430...

| 1 | |
|---|---|
| Consignee ONCOLOGY SUPPLY CO.    ATTN: PHARMACY | FROM: Shipper GENENTECH, INC. |
| Street 2801 HORACE SHEPARD DRIVE | Street 437 KAUFMANN COURT |
| City DOTHAN    State AL    Zip Code 36303 | City S. SAN FRANCISCO    State CA    Zip Code 94080 |
| | 24 hr. Emergency Contact Tel. No. CHEMTREC 1-800-424-9300 |

Route TT#7972037-40    Vehicle Number

| No. of Units & Container Type | HM | BASIC DESCRIPTION Proper Shipping Name, Hazard Class, Identification Number (UN or NA), Packing Group, per 172.101, 172.202, 172.203 | TOTAL QUANTITY (Weight, Volume, Gallons, etc.) | WEIGHT (Subject to Correction) | RATE | CHARGES (For Carrier Use Only) |
|---|---|---|---|---|---|---|
| 1 PALLET | | HERCEPTIN 440MG/20ML BWFI US 1(15534) LOT# M40566 | 1332 pcs. | | | |
| 1 PALLET | | RITUXAN 100MG(11105)LOT#M41417 | 3120 pcs. | | | |
| 1 PALLET | | RITUXAN 100MG(11105)LOT#M41417 | 2640 pcs. | | | |
| | | CATHFLO ACTIVASE 2MG VIAL(13057)LOT#M36431 | 480 pcs. | | | |
| 2 PALLETS | | RITUXAN 500MG(11106)LOT#M37009 | 3180 pcs. | | | |
| 1 PALLET | | AVASTIN 100MG US 1X(15734) LOT# M21998 | 2400 pcs. | | | |
| 1 PALLET | | AVASTIN 400MG US 1X(16482) LOT# M36075 | 1344 pcs. | | | |
| | | ************TOTAL WGHT.***************** | | 2880 lbs. | | |
| | | NON-HAZARDOUS/INFECTIOUS MATERIALS, | | | | |
| | | *SHIP VIA REFRIDGERATED TRUCK,STORE @ 2-8°C | | | | |
| | | UPON ARRIVAL.* | | | | |
| | | **IF DELAYS OCCUR/PLEASE CONTACT PRODUCT DISTRIBUTION | | | | |
| | | @ 650-225-1400 | | | | |
| | | GENENTECH SEAL:GENE 001754 | | | | |

PLACARDS TENDERED: YES ☐ NO ☐

REMIT C.O.D. TO: ADDRESS
COD    Amt: $
C.O.D. FEE: PREPAID ☐  COLLECT ☐ $
TOTAL CHARGES: $
FREIGHT CHARGES
FREIGHT PREPAID

SHIPPER GENENTECH, INC.
PER [signature] 2/14/05

CARRIER HENDERSON TRANSPORTATION
PER [signature]
DATE 02/14/05

2

Permanent post-office address of shipper    (Alt. 11/97)    STYLE F165-3 Labelmaster, An American Labelmark Co., Chicago, IL 60646  800-621-5808

EXHIBIT C